# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENEVIEVE MIRANDA,<br><br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL[1],<br>Acting Commissioner of Social Security,<br><br>  Defendant. | Case No.: 1:16-cv-00509 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF GENEVIEVE MIRANDA AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Genevieve Miranda asserts she is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff seeks judicial review of the decision denying her application for benefits, asserting the administrative law judge erred in evaluating the record, including the credibility of her subjective complaints. Because the ALJ failed to apply the proper legal standards, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

Plaintiff filed applications for benefits on September 27, 2012, in which she alleged disability beginning June 18, 2012. (Doc. 9-3 at 13) The Social Security Administration denied the applications at the initial level and upon reconsideration. (*Id.*; Doc. 9-5 at 2-11) Plaintiff requested a hearing, and

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the defendant.

1

testified before an ALJ on September 8, 2014. (Doc. 9-3 at 13) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on October 3, 2014. (*Id.* at 14-20) Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request on February 9, 2016. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v.*

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

### A.  Relevant Medical Evidence

In January 2011, Plaintiff was working as a teacher's aide. (Doc. 9-8 at 4) Plaintiff had a "fast heartbeat while sitting" and reported that she thought she had anxiety. (*Id.*) She was diagnosed with atherosclerotic heart disease, angina, diabetes, hypertension, and hyperlipidemia. (*Id.* at 7)

In February 2011, Plaintiff had a cardiac stress test, ultrasound, and echocardiographic report. (Doc. 9-8 at 9-11) Dr. Reddy found "no reversible or fixed perfusion defect," and Plaintiff's heart had "a normal left ventricular chamber size, all thickness, and wall motion." (*Id.* at 9) Dr. Reddy also found the ultrasound results were normal. (*Id.* at 10) However, with the echocardiographic report, Dr. Reddy found Plaintiff had "[m]ild concentric left ventricular hypertrophy." (*Id.* at 11)

Dr. Reddy again administered a cardiac treadmill stress test a year later, in February 2012. (Doc. 9-8 at 22) Dr. Reddy found the results were normal, and "reveal[ed] no reversible or fixed perfusion defect." (*Id.*)

In April 2012, Plaintiff described having "many years of dysesthesia in the lower extremities" to Dr. Yao Lin. (Doc. 9-8 at 31) She reported that she had "a burning pain" in the plantar region of her feet, which was "associated with [a] similar symptom in the lateral forelegs." (*Id.*) In addition, Plaintiff complained of pain in her lower back, which was not associated with muscle spasms or

3

weakness. (*Id.*) Dr. Lin found Plaintiff had "5/5 strength in all four extremities," but her reflexes were "1/4 in all extremities." (*Id.*) Dr. Lin also found Plaintiff's "pinprick and temperature sensations reduced in the right leg." (*Id.*)

Plaintiff had an EMG and nerve conduction study on her legs performed by Dr. Helen Liu on April 25, 2012. (Doc. 9-8 at 33) Dr. Liu found Plaintiff had "abnormal" results, and found "a mild axonal sensory polyneuropathy in distal legs which can be seen in [a] diabetic patient." (*Id.*)

In May 2012, Plaintiff continued to report pain in the plantar region of her feet, forelegs, and low back. (Doc. 9-8 at 28) Plaintiff also told Dr. Lin that she had numbness in the "1st three fingers of both hands." (*Id.*) Dr. Lin found Plaintiff had "5/5 strength in all four extremities," but her reflexes were "2/4 in all extremities." (*Id.* at 29)

Dr. Liu administered an EMG and nerve condition study on Plaintiff's arms on May 31, 2012. (Doc. 9-8 at 38) Dr. Liu found Plaintiff had "[m]oderately severe right median nerve entrapment neuropathy at [her] wrist that is consistent with carpal tunnel syndrome." (*Id.*) Dr. Liu also found "[m]ild left median nerve entrapment neuropathy at [her] wrist that is consistent with carpal tunnel syndrome." (*Id.*) Further, Dr. Liu found "mild axonal sensory polyneuropathy." (*Id.*)

In June 2012, Plaintiff saw Dr. Chinh Nguyen "for diabetic foot care." (Doc. 9-8 at 55) Plaintiff reported Lyrica was "helping somewhat," but she continued to have "generalized pain to her feet." (*Id.*) Dr. Nguyen opined Plaintiff had palpable pulses and "some hypersensitivity to the toes." (*Id.*) Plaintiff did not go to her next three appointments and was not seen again by Dr. Nguyen until September, when she reported she was "doing fairly well." (*Id.*) However, Dr. Nguyen found Plaintiff's "[n]erve sensation [was] decreased at the toes." (*Id.*)

On September 7, 2012, Dr. Carols Santivanez opined that Plaintiff needed to be "off work till 9-7-13." (Doc. 9-8 at 46) On September 11, Dr. Santivanez completed a disability questionnaire. (*Id.* at 47-49) Dr. Santivanez opined that Plaintiff had diabetic neuropathy and osteoporosis, which made her "unable to perform regular duties." (*Id.* at 47-48) Dr. Santivanez indicated he did not know what accommodations would make it possible for Plaintiff to return to work, and recommended she receive "medical leave for one year." (*Id.* at 48) On September 25, Dr. Santivanez opined that Plaintiff would "have medical impairments to work for 4-5 years." (*Id.* at 45, 63)

In February 2013, Plaintiff had a one-year follow up appointment with Dr. Reddy. (Doc. 9-8 at 82-83) Plaintiff reported she had shortness of breath when she was "sitting down and when she [was] doing housework, she [found] herself out of breath." (*Id.* at 82, emphasis omitted) Dr. Reddy recommended that Plaintiff lose weight, exercise, and eat a good diet with "lots of fruits and vegetables [and] cut back on salt intake." (*Id.* at 83, emphasis omitted)

Dr. Santivanez completed a medical source statement on March 21, 2013. (Doc. 9-8 at 84-89) According to Dr. Santivanez, Plaintiff was able to occasionally lift and carry up to 10 pounds but could never lift 11 or more pounds. (*Id.* at 89) Dr. Santivanez believed Plaintiff was limited to occasionally reaching, handling, fingering, feeling, pushing, and pulling with both arms. (*Id.* at 91) He opined Plaintiff could frequently climb stairs, ramps, ladders, or scaffolds; balance, stoop; kneel; crouch; crawl; and use foot controls. (*Id.* at 86-87) Dr. Santivanez believed that without interruption, Plaintiff could sit for seven hours, stand for six hours, and walk for six hours. (*Id.* at 85) Dr. Santivanez opined that Plaintiff had some environmental limitations but could tolerate frequent exposure to unprotected heights, moving mechanical parts, pulmonary irritants, and vibrations. (*Id.* at 88) He indicated also that Plaintiff could tolerate occasional exposure to extreme cold and extreme heat, and occasionally operate a motor vehicle. (*Id.*) Dr. Santivanez did not complete the portions of the questionnaire requesting that he identify any "particular medical or clinical findings" supporting his assessments. (*See id.* at 84-89)

On May 8, 2014, Dr. Santivanez wrote a letter in which he stated: "Ms. Miranda has been diagnosed with the following medical conditions: Osteoporosis, Diabetes, and Diabetic Neuropathy. Due to the medical conditions listed she is unable to work." (Doc. 9-8 at 3)

**B.     Administrative Hearing Testimony**

Plaintiff testified before the ALJ at a hearing on September 8, 2014. She reported she last worked as a teacher's assistant in June 2012. (Doc. 9-3 at 30, 42) She said her legs felt weak and her "spine was hurting" while she worked. (*Id.* at 30) Plaintiff stated that she went to a doctor for testing, and was diagnosed with carpal tunnel and neuropathy, or "nerve damage of the legs." (*Id.* at 30-31) She testified that after receiving the diagnoses, she returned to her doctor and "told him how [she] was feeling," and "he told [Plaintiff] that he would take [her] off work for a while." (*Id.* at 31)

She reported that she sees her doctor "on a monthly basis," and he also diagnosed Plaintiff with osteoporosis. (Doc. 9-3 at 31) Plaintiff said she has pain in her spine and neck, and her doctor told her that "the diabetes is not making it any better." (*Id.*) Plaintiff reported her diabetes had "just gotten worse," and was causing pain in her feet. (*Id.*) In addition, Plaintiff said she had numbness in her fingers and hand, which "tingle[d] at the tip," the same way her feet tingled. (*Id.* at 32) She testified that she was taking Lyrica twice a day for this nerve pain. (*Id.* at 32-33)

Plaintiff said the pain in her legs worsened when she walked, and estimated she was able to walk or stand for "about ten, fifteen minutes" before the pain increased. (Doc. 9-3 at 37-38) She reported that sitting in a chair also caused pain in her tailbone and spine. (*Id.* at 40) She testified that a couple months prior to the hearing, she started elevating her feet by sitting in a recliner about "four time[s] a day" because her legs would swell and feel heavy. (*Id.* at 34, 38, 41)

## C. The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial activity after the alleged onset date of June 18, 2012. (Doc. 9-3 at 15) Second, the ALJ found Plaintiff had "the following severe impairments: diabetes mellitus with peripheral neuropathy and bilateral carpal tunnel syndrome." (*Id.*) At step three, the ALJ determined these impairments did not meet or medically equal a listed impairment. (*Id.* at 16) Next, the ALJ opined:

> [T]he claimant has the residual functional capacity to lift an/or carry 20 pounds occasionally and 10 pounds frequently. She could sit 7 hours in an 8-hour workday, and stand and/or walk 6 hours in an 8-hour workday. This capacity most closely approximates light work as defined in 20 CFR 404.1567(b) except she cannot perform repetitive manipulative activities, but could perform non-repetitive manipulative activities frequently, including reaching. She could occasionally push or pull with the bilateral upper extremities. She could frequently push or pull with the bilateral lower extremities and frequently bend, stoop, crouch, kneel, or crawl, balance and climb stairs and ramps. She could only occasionally climb ladders, ropes, or scaffolds. She could frequently work around hazards or vibrations but only occasionally drive as a job task. She must avoid more than occasional exposure to temperature extremes.

(*Id.* at 16) With this residual functional capacity, the ALJ found Plaintiff was "capable of performing past relevant work as a Day Care Worker and Teacher's Aide." (*Id.* at 19) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 20)

## DISCUSSION AND ANALYSIS

Appealing the ALJ's decision, Plaintiff argues that the ALJ erred in evaluating the credibility

of her subjective complaints. (Doc. 13 at 5-9) According to Plaintiff, "the ALJ failed to articulate clear and convincing reasons for rejecting [her] testimony." (*Id.* at 8) On the other hand, Defendant contends that "the ALJ appropriately found Plaintiff's testimony not fully credible." (Doc. 14 at 4)

**A.     Plaintiff's Credibility**

In assessing credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

Factors that may be considered by an ALJ in assessing a claimant's credibility include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (the ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities when weighing the claimant's credibility).

The ALJ noted that Plaintiff "alleges an inability to work due to diabetic neuropathy, osteoporosis, high cholesterol, high blood pressure, and a heart murmur." (Doc. 9-3 at 17) In addition, the ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(*Id.*) The ALJ then summarized the medical record, beginning with Plaintiff's EMG and nerve condition study in April 2012. (*See id.* at 17-19)

7

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, that while a claimant's "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis").

Importantly, however, if an ALJ cites the medical evidence to support an adverse credibility determination, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (the ALJ has a burden to "identify what testimony is not credible and what evidence undermines the claimant's complaints"); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible"). Here, the summarized the record and stated there was "no objective evidence or opinion suggesting the need for lying down or elevating her legs, or sleeping during the day." (Doc. 9-3 at 19)

As the Ninth Circuit explained, "summariz[ing] the medical evidence supporting [the] RFC determination... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to ... ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). As a result, "the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 U.S. Dist. LEXIS 102007 at *44 (E.D. Cal. Aug. 3, 2016). Although Defendant identifies reasons for rejecting Plaintiff's credibility based upon the ALJ's summary of the medical records (*see* Doc. 13 at 8-9), these reasons were not clearly

8

identified by the ALJ to support the adverse credibility determination. Importantly, the Court is "constrained to *review* the reasons the *ALJ* asserts." *Brown-Hunter*, 806 F.3d at 494 (emphasis in original) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)); *Bray v. Comm'r*, 554 F.3d 1219, 1229 (9th Cir. 2009) (the Court cannot engage in "*post hoc* rationalizations that attempt to intuit what the [ALJ] might have been thinking"). Because the ALJ offered no more than a summary of the medical evidence—and Plaintiff's "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence" —the objective medical record fails to support the adverse credibility determination. *See Brown-Hunter*, 806 F.3d at 494; *Rollins*, 261 F.3d at 857.

Consequently, Court finds the ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa*, 367 F.3d at 886 (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the testimony can be credited as true, and remand is not appropriate. *Lester*, 81 F.3d at 834. However, courts retain flexibility in crediting testimony as true, and a remand for further proceedings regarding

the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints …"). Consequently, the Court finds a remand for further proceedings and re-evaluation of Plaintiff's testimony is appropriate.

## **CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the ALJ failed to apply the proper legal standards in evaluating Plaintiff's credibility, and administrative decision should not be upheld. *See Sanchez*, 812 F.2d at 510. Because remand is appropriate for further proceedings, the Court offers no findings related the remaining issue identified in Plaintiff's opening brief.

Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Genevieve Miranda and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __July 11, 2017__         _____/s/ Jennifer L. Thurston__
                                  UNITED STATES MAGISTRATE JUDGE